# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CAPITAL CORP. MERGERS &**
**ACQUISITIONS, INC.,**

            **Plaintiff,**

-vs-                                       Case No. 6:04-cv-158-Orl-28JGG

**ARIAS CO, LTD. and MARS CAPITAL**
**CO., LTD.,**

            **Defendants.**

_____

## ORDER

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** MOTION TO COMPEL (Doc. No. 64)
>
> **FILED:** April 20, 2006
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

Defendant and Counter-Plaintiff, Mars Capital Co., Ltd. ("Mars") moves this Court pursuant to Rule 33, 34, 36 and 37 of the Federal Rules of Civil Procedure for an order overruling certain objections Plaintiff made to discovery requests by Plaintiff and Counterclaim-Defendant, Capital Corp. Mergers and Acquisitions, Inc. ("Capital"), and compelling Capital to make further responses to discovery.

I.   **INTRODUCTION**

This lawsuit involves the efforts by Defendants Mars and Arias, both Japanese corporations, to acquire over 30 parcels of real estate in the Aoyama district of Tokyo, Japan.  Initially, Arias worked with NSTI Ltd. ("NSTI"), a banking and research company based in the United Kingdom.  NSTI subsequently introduced Arias to Capital, an Orlando-based finance company.  Mars was created for the purpose of receiving financing, acquiring the real estate, consummating the Aoyama Project, and developing the land.

On May 12, 2003, Mars and Capital signed a Commitment Letter in Tokyo, in which Capital agreed to provide $184 million in financing for the Aoyama Project together with nominees (Corporate Investors) "to whom Capital will, in its sole discretion, assign, sell, or transfer any or all of its interests."  Mars paid Capital a $460,000 "standby fee" pursuant to the Commitment Letter.

Capital claims that after signing the Commitment Letter, it discovered that Defendants had made material misrepresentations in order to induce Capital to sign the Commitment Letter.  Specifically, Capital claims that the property appraisal submitted by Defendants greatly overvalued the property.  Capital, therefore, did not perform its obligations under the Commitment Letter and did not tender $184 million in financing by the end of June 2003.  Mars contends that in reliance on the Commitment Letter, it had lined up purchasers who were willing to pay over $200 million for the potentially unified parcel of land.  Capital contends there were no viable purchasers.  Capital sues Defendants for fraudulent inducement and breach of contract.  Defendants counterclaim against Capital for breach of contract.

Mars served the discovery at issue in early March 2006.[1] Capital responded on April 3, 2006. There is no dispute that Capital's responses are untimely. Mars filed its motion on April 20, 2006, the last day for discovery.

II. **ANALYSIS**

A. **Discovery Regarding Corporate Investors**

Mars propounded Interrogatory 8 and Documents Requests 4 and 15, all of which relate to discovery of Capital's efforts to procure financing. Interrogatory 8 asks for the identification of potential or actual nominees, while the document requests relate to potential nominees with whom Capital discussed funding and documents provided to or received from potential or actual sources of funding. Capital's response to the discovery requests raised two objections: (1) that this information constitutes privileged financial and business information tantamount to a trade secret, and (2) that Confidentiality Agreements between it and its investors prevent production of documents.

Initially, the Court finds that whether Capital's failure to perform was due to an inability to obtain the promised financing (as opposed to the alleged misrepresentations by Defendants) is a proper subject for discovery. Further Mars' discovery requests are reasonably calculated to lead to the discovery of admissible evidence.

Capital has not provided this Court with a copy of any Confidentiality Agreement between it and its investors for the Court to evaluate and has not explained the purpose of those Confidentiality Agreements. The Court, therefore, finds this argument unpersuasive.

---

[1] The Certificates of Service fail to state the date that Mars mailed the discovery requests to Capital.

Assuming *arguendo* that the information is tantamount to a trade secret, a protective order or confidentiality agreement would protect Capital's interests. The Court reminds the parties of the Case Management Scheduling Order, which states in relevant part:

> Confidentiality Agreements – The parties may reach their own agreement regarding the designation of materials as "confidential." There is no need for the Court to endorse the confidentiality agreement. The Court discourages unnecessary stipulated motions for a protective order. The Court will enforce stipulated and signed confidentiality agreements. See Local Rule 4.15. Each confidentiality agreement or order shall provide, or shall be deemed to provide, that "no party shall file a document under seal without first having obtained an order granting leave to file under seal on a showing of particularized need."

Docket No. 38 at pp. 3-4. The Court finds it unacceptable that Capital never responded to Mars' offer to enter into a confidentiality agreement. Docket No. 64 at 10.

The Court **ORDERS** the parties' counsel to meet in person **on or before May 19, 2006**, to negotiate and execute a confidentiality agreement. Within five business days after the parties execute the confidentiality agreement, Capital is **ORDERED** to provide its amended responses to Interrogatory 8 and Document Requests 4 and 15, and to produce all responsive documents.

B.    **Documents Relating to NTSI**

Mars' Document Request No. 16 requested all documents relating to the relationship between Capital and NTSI from January 1, 2000, through December 31, 2003, including all business transactions. Capital objects to the production on the grounds of relevance and privileged financial information.

Certainly to the extent such documents relate to the Aoyama Project, the request is relevant and should be produced. This, however, does not appear to be the basis of the dispute. Mars

contends that discovery of other transactions between Capital and NTSI "could reveal" a pattern of bad faith conduct or deception by Capital or "could" show Capital was unable to fulfill sizeable financing commitments. The Court finds this discovery is irrelevant and constitutes a mere fishing expedition. The motion to compel is denied as to this request.

C. **Request for Admission No. 13**

Mars Request for Admission No. 13 asks Capital to admit that it "has never provided funding or capital to any entity for the purpose of purchasing land in Japan." Capital objects that the request is irrelevant. Mars claims the request is relevant because it relates to the extent of Capital's experience in assessing, estimating and valuing land in Japan.

The Court agrees that the request seeks relevant information. The Court **ORDERS** Capital to provide an amended response to Request for Admission No. 13 on or before May 19, 2006.

D. **Privilege Log**

Although Capital's responses to discovery claim certain documents are protected by the attorney-client privilege, work product doctrine, or trade secrets privilege, it has not produced a privilege log. Mars moves to compel Capital to produce its privilege log. Capital contends it has no obligation to produce a privilege log until after the Court ruled on its objections regarding the scope of the request, relying on a district court case from the District of Columbia.

This Court has previously held that the privilege log generally is due at the time of the written discovery response to avoid waiver of the privilege. *See Universal City Dev. Partners v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 696-96 (M.D. Fla. 2005). Since Mars only seeks production of the log at this time, the Court does not rule on potential waiver of any asserted privileges.

Mars' motion to compel production of a privilege log is granted. The Court **ORDERS** Capital to produce its privilege log on or before May 19, 2006.

E. **Extension of the Discovery Deadline**

Mars asks that the discovery deadline be extended by 45 days because of Capital's unfounded objections and delay in producing a privilege log. The Case Management Scheduling Order provides in relevant part:

> Extensions of Other Deadlines Disfavored – Motions for an extension of other deadlines established in this order, including motions for an extension of the discovery period, are disfavored. The deadline will not be extended absent a showing of good cause. Fed.R.Civ.P. 16(b); Local Rule 3.09(a). Failure to complete discovery within the time established by this Order shall not constitute cause for continuance. A motion to extend an established deadline normally will be denied if the motion fails to recite that: 1) the motion is joint or unopposed; 2) the additional discovery is necessary for specified reasons; 3) all parties agree that the extension will not affect the dispositive motions deadline and trial date; 4) all parties agree that any discovery conducted after the dispositive motions date established in this Order will not be available for summary judgment purposes; and 5) no party will use the granting of the extension in support of a motion to extend another date or deadline.

Docket No. 38 at p. 5.

The Court finds that Mars fails to establish good cause to extend the discovery deadline by 45 days, and that Mars does not satisfy the requirements of the Case Management Scheduling Order. Indeed, it is unclear whether Mars has even discussed with Capital its desire to extend the discovery deadline. The motion to extend the discovery deadline is denied without prejudice to Mars re-filing and making a specific showing of necessary discovery it was deprived of because of Capital's delay.

    F.    **Award of Expenses**

Mars requests an award of its expenses related to filing this motion to compel pursuant to Fed. R. Civ. P. 37(a)(4)(A). Rule 37 mandates an award of expenses, unless the Court finds that the opposing party's nondisclosure, response or objection was substantially justified." Rule 37(a)(4)(A). To the extent Capital prevailed on some of its objections, it was substantially justified in making those objections. A greater part of the motion, however, focused on discovery of information about the corporate investors. The Court finds that Capital was not substantially justified in its response to that discovery, including its failure to respond to Mars' offer to enter into a confidentiality agreement.

The Court, therefore, awards Mars one-half of the total reasonable fees and expenses related to filing the motion to compel. As Mars did not submit an affidavit detailing these fees and costs, the Court **ORDERS** Mars to confer with Capital at its meeting regarding the confidentiality agreement regarding the amount of the award. The Court **ORDERS** Capital to pay Mars one-half of the total reasonable fees and expenses related to filing the motion to compel within five business days after the meeting.

III.    **CONCLUSION**

The motion to compel is granted in part and denied in part. The Court **ORDERS**:

1.    The parties' counsel to meet in person **on or before May 19, 2006**, to negotiate and execute a confidentiality agreement;

2.    Within five business days after the parties execute the confidentiality agreement, Capital is to provide its amended responses to Interrogatory 8 and Document Requests 4 and 15, and to produce all responsive documents;

3.	Capital is to provide an amended response to Request for Admission No. 13 on or before May 19, 2006;

4.	Capital is to produce its privilege log on or before May 19, 2006; and

5.	Mars is to confer with Capital at its meeting regarding the confidentiality agreement regarding the amount of the award of fees and expenses related to the motion to compel. Capital is to pay Mars one-half of the total reasonable fees and expenses related to filing the motion to compel within five business days after the meeting.

**DONE** and **ORDERED** in Orlando, Florida on May 4, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE